ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XI-ESPECIAL

| WILSON CORBERG TRIGO<br><br>EX PARTE<br><br>Recurrido<br><br>v.<br><br>JOAQUÍN DE PUIGDORFILA, MIGUEL J. FERNÁNDEZ ESTEVE, FERNANDO FERNÁNDEZ ESTEVE, FERNANDO FERNÁNDEZ DEL VALLE<br><br>Peticionarios | KLCE202400821 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Guaynabo<br><br>Caso Núm.: GB2018CV00630<br><br>Sobre: Cartas Testamentarias |

Panel integrado por su presidenta, la Juez Lebrón Nieves, el Juez Adames Soto y la Jueza Martínez Cordero.

*Martínez Cordero, jueza ponente*

## RESOLUCIÓN

En San Juan, Puerto Rico, a 17 de septiembre de 2024.

Comparecen los peticionarios Joaquín de Puigdorfila, Miguel J. de Puigdorfila, María del R. Fernández Esteve, Fernando Fernández Esteve y Fernando Fernández del Valle (en conjunto y en adelante, peticionarios) mediante un recurso de *Certiorari* para solicitarnos la revisión de la *Orden a UBS Financial Services y/o Lcdo. Rafael Ojeda Diez*, emitida el 3 de junio de 2024, y notificada el 7 de junio de 2024, por el Tribunal de Primera Instancia, Sala Superior de Guaynabo (en adelante, TPI o foro primario).[1] Mediante dicha *Orden*, el tribunal le ordenó a UBS y al fiduciario (Trustee),[2] del Fideicomiso de Dora Ramírez de Arellano (en adelante, Fideicomiso DRA), que se abstuvieran de distribuir los fondos o inversiones a nombre del referido fideicomiso o de distribuir los ingresos que produzcan los referidos bienes, hasta que no se liquide

---

[1] Apéndice del recurso, a las págs. 1-2.
[2] Lcdo. Rafael Ojeda Diez.

Número Identificador

RES2024_____

el aludido fideicomiso u otra cosa disponga el tribunal. Además, en la misma *Orden* los autorizó a realizar el desembolso de fondos para el pago de mantenimiento y conservación de propiedades del caudal.

Por los fundamentos que expondremos, se *deniega* la expedición del auto de *Certiorari.*

**I**

De entrada, es menester señalar que esta es la segunda ocasión que las partes comparecen ante este Tribunal dentro del mismo pleito judicial. De modo que, el trámite procesal del presente caso fue plasmado en la *Sentencia* emitida por este panel, en el alfanumérico KLCE202300234. A tenor con la referida determinación, adoptamos por referencia el tracto procesal que surge de la referida *Sentencia* y nos circunscribiremos a reseñar aquellos asuntos estrictamente atinentes al recurso ante nuestra consideración.

Luego de varios incidentes procesales, el 7 de diciembre de 2023, el TPI ordenó la salida del albacea testamentario, Wilson Colberg Trigo, a través de una *Resolución y Orden Designando Contador Partidor Enmendada Nunc Pro Tunc.*[3] Mediante el aludido dictamen, el tribunal designó al Lcdo. Reynaldo Quiñones Márquez, como Contador Partidor del caudal hereditario de Dora Ramírez de Arellano Bartoli (en adelante, Causante).[4] Además, dispuso que el antedicho nombramiento fue hecho con el propósito de que el Contador Partidor llevara a cabo la administración, avalúo, liquidación, división y distribución del caudal hereditario.[5] De igual forma, le concedió autorización al Contador Partidor la potestad de celebrar vistas y reuniones. Finalmente, dispuso que el cargo de

---

[3] La *Resolución* original fue emitida el 17 de febrero de 2023. Véase, Sistema Unificado de Manejo y Administración de Casos (SUMAC), a la Entrada 257. La *Resolución y Orden Designando Contador Partidor Enmendada Nunc Pro Tunc* obra en el *Apéndice del Alegato en Oposición a Certiorari,* a las págs. 1-4.
[4] Apéndice del *Alegato en Oposición a Certiorari,* a las págs. 1-4.
[5] *Íd.,* a la pág. 2.

Contador Partidor englobaba todas las facultades que le Confiere el Código de Enjuiciamiento Civil,[6] y la Regla 41 de Procedimiento Civil.[7] Posteriormente, y a solicitud del Lcdo. Reynaldo Quiñones Márquez (en adelante, Contador Partidor), el TPI modificó su dictamen y aclaró que entre las funciones del Contador Partidor no se encontraba la administración de los bienes del caudal.[8]

Así las cosas, las partes estuvieron inmersas en una litigación que conllevó la presentación de varios escritos, así como la celebración de vistas ante el Contador Partidor. Ello, puesto a que, conforme a las directrices impartidas por el tribunal de instancia, de existir controversias, las partes debían recurrir en primer lugar al Contador Partidor, y luego al tribunal, por conducto de este.[9] Como parte de los asuntos ante la atención del Contador Partidor, se suscitó una controversia relacionada a un Fideicomiso constituido allá para el 7 de octubre de 2014, a favor de la causante y nombrado Fideicomiso DRA. Por lo anterior, y luego de celebrar una vista,[10] el 8 de febrero de 2024, el Contador Partidor presentó un escrito intitulado *Minuta Sobre Vista del Contador Partidor con los Abogados de las Partes Celebrada el 25 de enero de 2024.*[11]

Según se desprende del escrito, en dicha vista, y en lo atinente, se discutieron asuntos relacionados al Fideicomiso DRA, el cual fue creado previo al fallecimiento de la Causante y que, en el mismo, entre otras cosas, se estableció lo siguiente:

a. **Que la beneficiaria del Fideicomiso era Dora Ramírez de Arellano (La Causante)**
b. Que el "Trustee" del Fideicomiso era Oriental Bank & Trust.
c. Que el Fideicomiso se estableció para el beneficio de Dora Ramírez de Arellano como Beneficiaria para proveer para su bienestar, sustento y cuido, para

---

[6] CÓD. ENJ. CIV. PR Arts. 601-605, 32 LPRA § 2471.
[7] Apéndice del *Alegato en Oposición al Certiorari*, a la pág. 2. R. P. CIV. 3, 32 LPRA Ap. V, R. 3.
[8] Véase, Sistema Unificado de Manejo y Administración de *Casos* (SUMAC), a la entrada 378. La *Orden* en cuestión fue emitida el 3 de junio de 2024.
[9] Apéndice del *Alegato en Oposición a Certiorari*, a la pág. 4.
[10] La vista ante el Contador Partidor fue celebrada el 25 de enero de 2024.
[11] Apéndice del recurso, a las págs. 31-39.

mantener su "estándar" de vida, y para proveer para su cuido médico y tratamiento, según requerido.

**d. Que el Fideicomiso terminará cuando se haga la distribución final del caudal de la Beneficiaria.**

**e. Que a la muerte de la Beneficiaria, el "Trustee" distribuirá el caudal del Fideicomiso según lo establezca el "testamentary executor of the beneficiary" (el Albacea Testamentario del Beneficiario).**

f. Que ninguna cláusula del Fideicomiso, o distribución del caudal del Fideicomiso, podrá afectar los derechos de los herederos de la Beneficiaria en la porción del caudal hereditario conocida como "Legítima Estricta".[12]

Según se desprende del mencionado escrito, presentado por el Contador Partidor, en lo relativo al Fideicomiso DRA, las partes no conciliaron un acuerdo en torno a si el mismo formaba o no parte del caudal hereditario, asunto que fue informado al tribunal de instancia.

En atención a lo anterior, el 15 de febrero de 2024, el foro primario emitió una *Resolución*,[13] en la cual dispuso lo siguiente:

1. [...].

2. Se concede a las partes interventoras 30 días para que expongan su posición en relación a si el Fideicomiso DRA Trust forma o no parte del caudal.[14]

En cumplimiento, el 6 de marzo de 2024, los peticionarios Joaquín de Puigdorfila, Miguel J. de Puigdorfila, Fernando Fernández Esteve, María del Rosario Fernández Esteve y Fernando Fernández presentaron una *Moción en Cumplimiento de Orden Sobre el Fideicomiso "DRA Trust"*.[15] Adujeron que el Fideicomiso DRA no formaba parte del caudal hereditario de la Causante, sujeto a la partición designada al Contador Partidor.[16] Además, expresaron que era el Fiduciario o "Trustee" quien estaba autorizado a ejercer funciones para liquidar el Fideicomiso DRA o la distribución del

---

[12] Apéndice del recurso, a la pág. 38. Información provista por el Contador Partidor en su escrito titulado *Minuta Sobre Vista del Contador Partidor con los Abogados de las Partes Celebrada el 25 de enero de 2024.*

[13] Apéndice del recurso, a la pág. 40.

[14] *Íd.,* a la pág. 41.

[15] *Íd.,* a las págs. 42-47.

[16] *Íd.,* a la pág. 42.

patrimonio conforme a este.[17] Lo anterior, incluyendo el comparecer a los tribunales, agencias administrativas, entre otros, en relación asuntos relacionados al Fideicomiso DRA.[18] Por otra parte, arguyeron, en síntesis, que, en el presente caso, se encontraba en controversia si el Fideicomiso DRA formaba o no parte del caudal, empero no se había reclamado la presencia del fiduciario para defender el mismo, siendo este el llamado administrarlo y protegerlo. A tenor, solicitaron al TPI que dispusiera que el Fideicomiso DRA estaba bajo la jurisdicción del fiduciario y no bajo la jurisdicción del Contador Partidor nombrado por el tribunal, a los fines de actuar sobre este.[19]

Por su parte, al día siguiente, comparecieron las partes interesadas Miguel Fernández Esteve y Francisco Fernández Esteve, a través de una *Moción en Cumplimiento de Orden y Uniéndonos al Escrito Presentado por la Lcda. Fontánez Fuentes*.[20] En su moción, se unieron a lo alegado y suplicado en el mencionado escrito presentado el 6 de marzo de 2024.[21] Expusieron, además, que, el foro primario debía determinar que el Fideicomiso DRA no formaba parte del caudal de la Causante.[22] De igual forma, y en cumplimiento, compareció el señor Miguel Antonio Esteve Ramírez de Arellano expresando que, en su opinión, el Fideicomiso DRA formaba parte del caudal hereditario y debía ser liquidado.[23]

Por otro lado, el 15 de marzo de 2024, ocurrieron dos (2) eventos procesales. El *primero* fue que el Contador Partidor emitió una *Orden del Contador Partidor*.[24] En la referida *Orden*, le requirió a las partes que lo colocaran en posición para adelantar la

---

[17]Apéndice del recurso, a la pág. 16.
[18] *Íd.,* a la pág.17.
[19] *Íd.,* a la pág. 47.
[20] *Íd.,* a las págs. 48-49.
[21] *Íd.,* a las págs. 48-49 y 42-47.
[22] *Íd.,* a la pág. 49.
[23] *Íd.,* a las págs. 61-62.
[24] *Íd.,* a las págs. 50-51.

distribución de los bienes, por lo que les ordenó, en lo pertinente, que le proveyeran el nombre de la institución que actualmente operaba como "Trustee" del Fideicomiso DRA y el nombre e información contacto del oficial de dicha entidad a cargo. Además, requirió que se le proveyera copia de todos los informes que hubiese sometido cualquier "Trustee" anterior y el "Trustee" actual.[25] Advirtió que las partes tenían veinte (20) días para cumplir con las órdenes emitidas, y que, de no cumplir, este distribuiría los bienes utilizando su mejor criterio y cumpliendo con las disposiciones del Artículo 1014 del Código Civil de 1930.[26]

El *segundo* evento procesal que ocurrió, el 15 de marzo de 2024, fue que el Contador Partidor presentó una *Moción del Contador Partidor Solicitando Órdenes* y una *Orden del Contador Partidor.*[27] En su escrito, el Contador Partidor solicitó que se emitiera: (i) una orden dirigida a UBS Financial Services para que se abstuviese ". . . de distribuir los fondos o inversiones pertenecientes al Fideicomiso DRA Trust, o de distribuir los ingresos que produzcan dichos bienes, hasta tanto no se liquide el Fideicomiso";[28] y (ii) otra orden para que se dispusiera lo siguiente:

> . . . según la Escritura de Constitución del Fideicomiso DRA, "la distribución de los bienes se hará por el síndico (Trustee) del Fideicomiso, **quien distribuirá los bienes según sea ordenado por el Albacea Testamentario de la Sucesión de la beneficiaria del Fideicomiso** (quien era la Sra. Dora Ramírez de Arellano Bartoli). En dicha orden se debe establecer que habiendo sido destitu[i]do el Albacea Testamentario de la Beneficiaria, **la persona llamada a establecer cómo el Síndico del Fideicomiso distribuirá los bienes del Fideicomiso es el Contador Partidor**.[29]

---

[25] *Íd.,* la pág. 50.
[26] *Íd.,* a la pág. 51. El derecho aplicable en el caso de autos se remite al Código Civil de Puerto Rico de 1930, 31 LPRA sec. 1 *et seq.* (derogado), toda vez que nos encontramos ante hechos ocurridos con anterioridad a la aprobación y vigencia del Código Civil de Puerto Rico de 2020, Ley Núm. 55-2020, 31 LPRA sec. 5311 *et seq.*
[27] Apéndice del recurso, a las págs. 52-54.
[28] *Íd.,* a la pág. 52.
[29] *Íd.,* a la pág. 53.

En reacción a lo solicitado por el Contador Partidor, Joaquín de Puigdorfila, Miguel J. de Puigdorfila, Fernando Fernández Esteve, María del Rosario Fernández Esteve y Fernando Fernández presentaron un escrito mediante el cual solicitaron al TPI que se abstuviese de emitir la orden dirigida a UBS Financial Services, hasta tanto se determinara si el Fideicomiso DRA formaba parte del caudal hereditario de la Causante.[30]

Luego, el Contador Partidor presentó una *Moción del Contador Partidor Reiterando Solicitud de Órdenes*,[31] con el fin de que el TPI atendiera el escrito presentado por este el 15 de marzo de 2024.[32]

Así las cosas, los trámites procesales continuaron y el Contador Partidor celebró otra vista el 15 de mayo de 2024.[33] El propósito de esta vista fue para discutir algunos asuntos pendientes y establecer un plan de trabajo para atender los mismos. Sobre el particular, el 16 de mayo de 2024, el Contador Partidor presentó una *Minuta del Contador Partidor sobre Vista vía Zoom con los abogados de las partes*.[34] Surge del antedicho escrito que, con relación al Fideicomiso DRA, este informó a las partes que, a través de una previa comunicación con el corredor (broker) en UBS, a cargo de la cuenta de inversiones del aludido fideicomiso, le informaron que se había nombrado un fiduciario (Trustee) para el Fideicomiso DRA, el Lcdo. Rafael Ojeda Diez. Se desprende, además, que en la vista se discutió nuevamente el asunto relacionado a si el Fideicomiso DRA formaba o no parte del caudal hereditario de la Causante. Se abundó que el asunto se encontraba en controversia, y que el Contador Partidor dispuso que no haría gestión alguna respecto al mismo hasta tanto el Tribunal resolviera. En la vista se

---

[30] *Íd.,* a las págs. 55-60.
[31] *Íd.,* a las págs. 93-94. El escrito en cuestión fue presentado el 10 de mayo de 2024.
[32] Véase, *Moción del Contador Partidor Solicitando Órdenes* y una *Orden del Contador Partidor.* Apéndice del recurso, a las págs. 52-53.
[33] Véase, el SUMAC, a la Entrada 371.
[34] *Íd.*, a la entrada 371.

hizo mención además del valor de los activos e inversiones en el Fideicomiso DRA a marzo de 2024, así como que, durante dicho mes, se distribuyó una cantidad de ese dinero entre los coherederos y que no existía controversia sobre ese particular.

En respuesta a la controversia trabada, el 3 de junio de 2024, notificada el 7 de junio de 2024, el tribunal de instancia emitió una *Resolución y Orden sobre Fideicomiso*.[35]

En la *Resolución,* el TPI incluyó una relación de lo que se estableció en el Fideicomiso DRA, cónsono a lo expresado por el Contador Partidor en el escrito presentado.[36] Expresó, en síntesis, que se discutió sobre la posible liquidación del Fideicomiso DRA, con el fin de utilizar los fondos para una distribución parcial de la participación hereditaria a algunos coherederos, y que se consignara parte del dinero en Tribunal para el pago del mantenimiento de las propiedades inmuebles pertenecientes al caudal, hasta que se efectuara la liquidación final del mismo caudal.[37] Sin embargo, acentuó que no hubo acuerdo entre las partes.[38] El foro primario hizo mención en lo relativo a que el Contador Partidor se reunió con el señor Eduardo González Inclán, oficial de UBS Securities, quien manejaba las cuentas de inversiones del Fideicomiso DRA, y le proveyó algunos documentos los cuales reflejaban el valor del mismo para marzo de 2015, y el valor actual de las inversiones, al 31 de enero de 2024.[39] Resaltó, además, lo relacionado a la controversia pendiente sobre si el Fideicomiso DRA formaba o no parte del caudal hereditario de la Causante y dedicó algunas líneas para incluir un resumen de las posiciones de las partes.[40]

---

[35] Apéndice del recurso, a las págs. 95-100.
[36] *Íd.,* a la pág. 96. Véase, además, la *Minuta Sobre Vista del Contador Partidor con los Abogados de las Partes Celebrada el 25 de enero de 2024,* en el Apéndice del recurso, a las págs. 31-39.
[37] Apéndice del recurso, a las págs. 96-97.
[38] *Íd.,* a la pág. 97.
[39] *Íd.,* a la pág. 97.
[40] *Íd.,* a las págs. 97-98.

En la antedicha *Resolución,* aunque de forma específica no dispuso si el Fideicomiso DRA formaba o no parte del caudal, resolvió lo siguiente:

> . . . resolvemos que una vez el Contador Partidor determine que los bienes del fideicomiso ya no son necesarios para la conservación y/o mantenimiento de las propiedades del caudal que así lo requieran, estos serán distribuidos a los herederos siguiendo las disposiciones pertinentes de la escritura sobre el Fideicomiso[,] así como la voluntad de la testadora. Esta distribución se realizará conforme a las instrucciones que imparta el Contador Partidor.[41]

En la *Resolución,* el tribunal de instancia concluyó, además, que:

> . . .en est[e] caso, no podemos obviar lo dispuesto en la séptima cl[á]usula de la escritura sobre Fideicomiso. Según [la] cl[á]usula, el Fideicomiso terminar[á] cuando finalmente se distribuya la herencia de la causante y/o fideicomisaria. Hasta tanto ello ocurra, el Fideicomiso continuará con el fin de brindar conservación y mantenimiento a las propiedades. Cualquier sobrante será distribuido entre los herederos de Doña Dora Ramírez de Arellano, conforme a lo dispuesto por ella en su Testamento. Esta distribución, según la escritura, se hará por el Síndico (Trustee) del Fideicomiso, quien distribuirá los bienes, siguiendo las indicaciones del Executor of the Will (Albacea Testamentario). **Sin embargo, habiendo sido relevado el Albacea Testamentario, es el Contador Partidor quien deberá determinar la forma en que el Síndico del Fideicomiso distribuirá lo bienes del Fideicomiso**. (Énfasis Nuestro)[42]

Por otro lado, en esa misma fecha, entiéndase el 3 de junio de 2024, notificada el 7 de junio de 2024, el tribunal de instancia emitió la *Orden* recurrida.[43] En la *Orden* recurrida, el TPI dispuso lo siguiente:

> **"ORDEN A UBS FINANCIAL SERVICES Y/O LCDO. RAFAEL OJEDA DIEZ**
>
> Evaluada la Petición formulada por el Contador Partidor, Lcdo. Reynaldo Quiñones Márquez, se ordena a UBS Financial Servicies y/o Lcdo. Rafael Ojeda Diez, Correo Electrónico, *rafaelojeda@ojedalawpr.com*, para que se abstengan de distribuir los fondos o inversiones a nombre de Fideicomiso DRA Trust depositados en la cuenta núm. JX 18972 G5, o de distribuir los ingresos

---

[41] Apéndice del recurso, a la pág. 100.
[42] *Íd.,* a las págs. 99-100.
[43] *Íd.,* a las págs. 1-2.

que produzcan dichos bienes, hasta tanto no se liquide el Fideicomiso, u otra cosa disponga el Tribunal. Conforme a la escritura mediante la cual se constituyó el Fideicomiso, previo a dar este por terminado, solo se autorizará el desembolso de fondos para el para el (sic) pago de mantenimiento y conservación de propiedades del caudal que así lo requieran

**NOTIFÍQUESE**".[44]

En desacuerdo, el 12 de junio de 2024, los peticionarios Joaquín de Puigdorfila, Miguel J. de Puigdorfila, Fernando Fernández Esteve, María del Rosario Fernández Esteve y Fernando Fernández presentaron una *Urgente Solicitud de Reconsideración.*[45] En esta, arguyeron que el Tribunal había determinado que el Fideicomiso DRA no formaba parte del caudal de la Sra. Ramírez de Arellano, por lo tanto, el Tribunal carecía de jurisdicción para emitir la *Orden* prohibiendo a UBS Financial Services y al *Trustee* que se abstuvieran de distribuir los fondos de dicho fideicomiso. Detallaron, en síntesis, que, a tenor con la Cláusula número siete (7) del Fideicomiso DRA,[46] los intereses del aludido fideicomiso se han estado distribuyendo a los herederos, conforme a su participación hereditaria, y no ha habido ningún problema con ellos. En respuesta, el 28 de junio de 2024, el TPI declaró *No Ha Lugar* la referida moción.[47]

---

[44] *Íd.,* a la pág. 2. Apuntamos que no surge de los autos ante nuestra consideración ni en el SUMAC la constancia de una certificación acreditativa de que dicha Orden hubiese sido diligenciada o notificada a la persona natural o jurídica a quien fue emitida.

[45] Apéndice del recurso, a las págs. 3-6.

[46] **SEVENTH: TERMINATION OF THE TRUST**: This Trust will terminate upon the final distribution of the estate of the Beneficiary. Until such time as the estate of the deceased Beneficiary has been distributed to her heirs, this trust will continue in order to provide for the conservation, maintenance, provisioning of her estate, properties and interests and any remaining income will be distributed to the heirs of the Beneficiary in the same proportion as their inheritance interest as provided for in the Will of the deceased Beneficiary and indicated to the Trustee by the executor of the Will of the Beneficiary and the Trust Protector.

Upon the final distribution of the estate upon the death of the Beneficiary, the Trustee will distribute the Trust Estate as directed by the testamentary executor of the Beneficiary.

Anything herein to the contrary notwithstanding, no provision of this Trust, nor distribution of the Trust Estate, shall affect the rights of the heirs of the Beneficiary to that portion of the estate known in Spanish as the "Legítima Estricta".

In case the Trust should ever be without any assets it shall immediately terminate.

Inconforme, el 29 de julio de 2024, la parte peticionaria presentó el presente recurso de *Certiorari*. En el mismo, esbozó los siguientes tres (3) señalamientos de error:

Primer Error: Erró el TPI al expedir la Orden dirigida a UBS y al síndico para que se abstengan de, entre otros, distribuir los ingresos que produzcan los fondos del Fideicomiso DRA, a pesar de que el mismo no forma parte del caudal hereditario de Doña Dora.

Segundo Error: Erró el TPI al expedir la referida Orden dirigida a UBS y al síndico, a pesar de que el tribunal sólo tiene facultad para intervenir en el Fideicomiso DRA para evitar un abuso de discreción por parte del fiduciario.

Tercer Error: Erró el TPI al expedir una Orden prohibiéndole al síndico a distribuir los ingresos que producen los fondos del Fideicomiso DRA, interviniendo con las facultades de este, a pesar de que dicho síndico no ha sido notificado para que defienda sus actuaciones en protección del Fideicomiso y sus bienes.

El 13 de agosto de 2024, emitimos una *Resolución* en la que le concedimos a la parte recurrida hasta el 19 de agosto de 2024, para expresarse en torno a la petición de *Certiorari*. El 19 de agosto de 2024, compareció el señor Miguel Antonio Esteve Ramírez De Arellano a través de un *Alegato en Oposición a Expedición del Auto de Certiorari y en Solicitud de Desestimación*. Puntualizamos que la solicitud de desestimación se basó, en síntesis, a la posición de la parte recurrida en que, la solicitud de reconsideración instada por los peticionarios ante el TPI, alegadamente dejó de exponer con suficiente particularidad y especificidad el derecho y las conclusiones de derecho que pretendían el foro primario reconsiderara, por lo que el referido escrito no tuvo el efecto interruptor para acudir ante nos. En repuesta, el 22 de agosto de 2024, emitimos una *Resolución* en la que declaramos *No Ha Lugar* la solicitud de desestimación presentada por Miguel Antonio Esteve Ramírez de Arellano y le instruimos a cumplir con nuestra *Resolución* del 13 de agosto de 2024, en la cual le ordenamos a expresarse en torno al recurso de *Certiorari* instado por la

peticionaria. Posteriormente, el 26 de agosto de 2024, compareció ante nos el señor Miguel Antonio Esteve Ramírez De Arellano, a través de un *Alegato en Oposición a Certiorari*.

Con el beneficio de la comparecencia de las partes, procederemos a esbozar el derecho aplicable.

**II**

**A. Certiorari**

Los recursos de *Certiorari* presentados ante el Tribunal de Apelaciones deben ser examinados en principio bajo la Regla 52.1 de las Reglas de Procedimiento Civil.[48] Esta Regla limita la autoridad y el alcance de la facultad revisora de este Tribunal mediante el recurso de *Certiorari* sobre órdenes y resoluciones dictadas por los Tribunales de Primera Instancia. La Regla lee como sigue:

> [...].

> El recurso de Certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de Certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.[49]

> [...].

Por su parte, la Regla 52.2 (b) dispone sobre los términos y efectos de la presentación de un recurso de *Certiorari* que:

> [...].

> Los recursos de *certiorari* al Tribunal de Apelaciones para revisar resoluciones u órdenes del Tribunal de

---

[48] 32 LPRA Ap. V, R. 52.1.
[49] *Íd.*

Primera Instancia o al Tribunal Supremo para revisar las demás sentencias o resoluciones finales del Tribunal de Apelaciones en recursos discrecionales o para revisar cualquier resolución interlocutoria del Tribunal de Apelaciones deberán presentarse dentro del término de treinta (30) días contados desde la fecha de notificación de la resolución u orden recurrida. El término aquí dispuesto es de cumplimiento estricto, prorrogable sólo cuando medien circunstancias especiales debidamente sustentadas en la solicitud de *certiorari*.

[…].[50]

Establecido lo anterior, precisa señalar que el recurso de *Certiorari* es un vehículo procesal que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior.[51] A diferencia del recurso de apelación, el auto de *Certiorari* es de carácter discrecional.[52] La discreción ha sido definida como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera".[53] A esos efectos, se ha considerado que "la discreción se nutre de un juicio racional apoyado en la razonabilidad y en un sentido llano de justicia y no es función al antojo o voluntad de uno, sin tasa ni limitación alguna".[54] Por otra parte, la Regla 40 del Reglamento del Tribunal de Apelaciones esgrime los criterios que el Tribunal debe para expedir un auto de *Certiorari*.[55]

El Tribunal Supremo de Puerto ha establecido que un tribunal revisor no debe sustituir su criterio por el del foro de instancia, salvo cuando estén presentes circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto.[56] Quiérase decir, no hemos de interferir con los Tribunales de Primera Instancia en el ejercicio de sus facultades discrecionales, excepto en aquellas

---

[50] *Íd.*
[51] *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023)*; 800 Ponce de León v. AIG,* 205 DPR 163, 174 (2020).
[52] *Rivera Figueroa v. Joes's European Shop*, 183 DPR 580, 596 (2011).
[53] *Mun. de Caguas v. JRO Construction, Inc.* 201 DPR 703, 712 (2019); *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 434-435 (2013).
[54] *SLG Zapata-Rivera v. J.F. Montalvo,* supra, 435.
[55] 4 LPRA Ap. XXII-B, R.40.
[56] *Coop. Seguros Múltiples de P.R. v. Lugo,* 136 DPR 203, 208 (1994).

situaciones en que se demuestre que este último: (i) actuó con prejuicio o parcialidad, (ii) incurrió en un craso abuso de discreción, o (iii) se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo.[57]

**III**

Habida cuenta de que el recurso ante nuestra consideración se trata de un *Certiorari*, este tribunal revisor debe determinar, como cuestión de umbral, si procede su expedición.

Luego de haber evaluado el expediente en su totalidad, incluyendo, además, la determinación objeto de revisión, los autos ante el TPI en el SUMAC, así como el derecho aplicable, no hemos encontrado que el foro primario haya actuado con prejuicio o parcialidad, que haya habido un craso abuso de discreción ni tampoco, que la determinación recurrida sea manifiestamente errónea. Es por lo anterior, que hemos acordado que no procede nuestra intervención. Por tanto, en virtud de lo dispuesto en la Regla 52.1 de las Reglas de Procedimiento Civil[58], y la Regla 40 del Reglamento de este Tribunal[59], denegamos la expedición del auto de *Certiorari*.

Lo aquí resuelto, advertimos, no tiene efecto de juzgar o considerar en los méritos ninguna de las controversias de derecho planteadas por las partes, de modo que estas podrían ser planteadas nuevamente en una etapa posterior. Es decir, la denegatoria de esta Curia a expedir un recurso de *Certiorari* no implica que el dictamen revisado esté libre de errores o que constituya una adjudicación en los méritos.[60] Esto es así, ya que, como es sabido, una resolución de denegatoria de un auto de *Certiorari* no implica posición alguna de este Tribunal respecto a los méritos de la causa sobre la cual trata

---

[57] *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).
[58] 32 LPRA Ap. V, R. 52.1.
[59] 4 LPRA Ap. XXII-B, R. 40.
[60] *Cacho Pérez v. Hatton Gotay*, 195 DPR 1, 12 (2016).

dicho recurso.[61] La resolución denegatoria simplemente es indicio de la facultad discrecional del tribunal revisor de negarse a revisar en determinado momento una decisión emitida por el TPI.[62]

**IV**

Por los fundamentos que anteceden, se *deniega* la expedición del auto de *Certiorari.*

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[61] *SLG v. Pauneto Rivera,* 130 DPR 749, 755 (1992).
[62] *Íd.,* 756.